# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-04864 (JFB)
_____

STANLEY ABRAHAM,

Appellant,

VERSUS

JANET STUART,

Appellee.

_____

**MEMORANDUM AND ORDER**
July 28, 2016
_____

JOSEPH F. BIANCO, District Judge:

Stanley Abraham ("appellant") appeals from an order entered by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") in an underlying bankruptcy proceeding. After trial and in an opinion dated August 4, 2015 (hereinafter, the "August 4 Order"), the Honorable Robert E. Grossman denied appellant's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) ("Section 727(a)(4)(A)") on the grounds that appellant demonstrated a reckless disregard for the truth constituting fraudulent intent in submitting a chapter 7 petition that contained omissions of material information.

On appeal, appellant argues that the August 4 Order should be reversed and that he should be granted a discharge. He claims that (i) the Bankruptcy Court acted without jurisdiction because the appellee lacked standing to bring the underlying Amended Complaint; (ii) the Bankruptcy Court abused its discretion in allowing appellee to file the Amended Complaint; and (iii) the Bankruptcy Court erred in concluding that appellant knowing and fraudulently submitted a material false oath. Appellant admits certain inaccuracies in his submissions, but argues that the relevant statements do not amount to a false oath, were not material, and were not made with fraudulent intent, including because they were caused "by an attorney who did not fully appreciate and or diligently prosecute" the case. (Appellant Br. at 14.) Janet Stuart ("appellee") opposes, arguing the following: (i) the Bankruptcy Court correctly determined she had standing as a creditor to bring the Amended Complaint; (ii) the Bankruptcy Court did not err in allowing plaintiff to file her Amended Complaint; and

(iii) the Bankruptcy Court correctly determined that appellant was not entitled to a discharge under Section 727(a)(4)(A) because appellant demonstrated a reckless disregard for the truth when he signed and submitted a bankruptcy petition containing material omissions, and appellant's reliance on counsel to accurately complete his bankruptcy schedules does not negate his reckless disregard for the truth or his duty to ensure that the statements he was making under oath were accurate and truthful.[1]

For the reasons set forth below, the Court finds appellant's arguments on appeal to be unpersuasive and affirms the Bankruptcy Court's August 4, 2015 Order in all respects.

## I. BACKGROUND

### A. Facts

The following facts are taken from the Bankruptcy Record ("BR"). Although the section entitled "Statement of the Case and Factual Background" in appellant's brief contains certain factual assertions not raised before the Bankruptcy Court, appellant does not dispute the facts contained in the Bankruptcy Court's August 4 Order; instead, he objects to the conclusions drawn from those facts and the application of law. (Appellant Br. at 5 ("the facts are considered undisputed") and Appellant Reply Br. at 1 ("the appeal is based on the premise that the judge misunderstood the law and misapplied them to the given facts")).) The Court, therefore, draws the facts from the August 4 Order, which includes facts agreed to by the parties in a Joint Post-Trial Memorandum and facts developed from the trial testimony and exhibits.

### 1. Appellee's Loans

Appellee maintained a friendship with appellant, appellant's wife, Amy Abraham, and appellant's father-in-law, Thomas John ("John"). (BR at 804.) Appellee and appellant also worked together for a period of time at John's real estate company, American Gardens. (*Id.*) Between 2008 and 2010, appellee loaned sums of money to John, providing the loans in the form of wire transfers or checks. (*Id.*) On July 21, 2009 and August 3, 2009, appellee transferred a total of $75,000 to appellant's personal checking account. (*Id.* at 805.) Neither appellant nor John repaid appellee's loans and appellee pursued collection efforts. (*Id.*) In August 2010, appellee filed a civil suit in state court against John, appellant, and a third defendant alleging that she had made loans to

---

[1] Appellee also argues that this appeal should be dismissed because the appellant (i) failed to provide adequate notice of the issues to be decided on appeal, (ii) argues beyond the scope of his statement of issues, and (iii) impermissibly attempts to add facts to the record. (Appellee Br. at 12-18.) The Court declines to dismiss the appeal on these bases. Although the Court recognizes the importance of precisely stating the issues on appeal, the Court, in its discretion, does not conclude that appellant waived his first, fifth, sixth, and seventh points of argument. Based on the substance of appellant's briefs and because the applicable standard of review with respect to knowledge and intent under Section 727(a)(4) is a clearly erroneous standard, as discussed *infra*, the Court construes appellant's fifth and sixth points of argument (point nine in appellant's table of contents entitled "The Trial Record and Testimony Failed to Prove Knowledge and Fraudulent Intent The Trial Record Fails to Show any Evidence of Recklessness to Truth") as an argument that the Bankruptcy Court erred in concluding that appellant demonstrated a reckless disregard for the truth sufficient to establish an intent to defraud or deceive. This is an argument subsumed within appellant's broad statement of the issues. With respect to appellee's argument that appellant impermissibly attempts to add facts to the record, the Court, as discussed *infra*, draws the facts from the August 4 Order, and does not consider certain factual assertions not raised before the Bankruptcy Court.

the defendants bearing interest and that the loans had not been repaid. (*Id*.) The state court action, in which appellee seeks repayment of $1,083,291.45, plus fees and charges, was pending when appellant filed the underlying bankruptcy. (*Id.* at 806.)

In the trial held before the Bankruptcy Court, appellee testified that she lent appellant money in 2009 for real estate expansion purposes with the expectation that she would be paid back. (*Id.* at 806-07.) She testified that the parties did not document the agreement, sign a promissory note, or involve lawyers in the transaction. (*Id.* at 807.) Amy Abraham testified that the $75,000 that was transferred to appellant was intended as a loan for John, but had been directed to appellant because John's account was frozen at the time. (*Id.*) Appellant did not testify about the circumstances surrounding the loan, but did not dispute that he received and did not repay the $75,000. (*Id.*)

On August 23, 2013 (the "petition date"), Stanley Abraham and Amy Abraham (together, the "debtors") filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. (*Id.* at 803.) On Schedule F, appellee is listed as an unsecured, non-priority creditor holding a claim of $1,083,820.45. (*Id.*)

2. Business Interests

Appellant has or had interests in several different companies, including acting as the sole owner and officer of three companies: Amstan LLC ("Amstan"), Amstan Real Estate ("Amstan Real Estate"), and Asian Foods & Produce Distributors, Inc. ("Asian Foods"). (*Id.* at 807.) Appellant also had an interest within six years of the petition date in a fourth company, Abramen Imports, Inc. ("Abramen"). (*Id.* at 808.)

Amstan was formed on September 24, 2008 as a domestic limited liability company and is presently an active corporation. (*Id.* at 807.) At trial, appellant testified that Amstan owned and operated a Subway franchise until late 2012, and that he earned little income from Amstan, but at times paid himself by check. (*Id.* at 807-08.) According to the debtors' joint income tax returns for 2011 and 2012, Amstan generated $587,977 in 2011 and $512,356 in 2012 in gross receipts from operation of the Subway franchise. (*Id.* at 808.) Amstan Real Estate was formed on September 30, 2009 as a domestic limited liability company and is currently an active corporation. (*Id.*) There was no evidence submitted at trial regarding the purpose or history of Amstan Real Estate, and no tax returns were filed in 2011 or 2012. (*Id.*) Asian Foods was incorporated on May 17, 2013 for wholesale rice distribution. (*Id.*)[2] Appellant testified at trial that a personal friend made a post-petition investment of $60,000 for 50% interest in Asian Foods in December 2013 or January 2014, but that Asian Foods is not currently profitable. (*Id.*) Abramen was incorporated on July 8, 2003 to import coffee from India and was dissolved on January 27, 2010. (*Id.*)

Despite these interests, in response to Line 13 of Schedule B, which requires a debtor to disclose "stocks and interests in incorporated and unincorporated businesses," appellant answered, "NONE." (*Id.* at 809.) On September 27, 2013, appellant filed an Amended Schedule B in which he added a disclosure of his interest in Amstan; he did not include his interests in Amstan Real Estate or Asian Foods. (*Id.*)

---

[2] Asian Foods was formerly known as Ambient Pharmacueticals & Services, Inc. ("Ambient"), which was incorporated on September 30, 2011. (*Id.* at 808.) It is not clear that Ambient conducted business, and Ambient's 2012 tax returns show $0 in receipts. (*Id.*)

3

In response to Question 18(a) of appellant's Statement of Financial Affairs ("SOFA"), which requires a debtor to disclose the "nature, location, and name of business," appellant answered, "NONE." (*Id.*) On June 6, 2014, nearly nine months post-petition, appellant filed a First Amended SOFA listing Amstan and Abramen in response to Question 18(a). (*Id.*) On June 12, 2014, appellant filed a Second Amended SOFA adding Ambiant. (*Id.*) He did not disclose his interests in Amstan Real Estate or in Ambiant's successor, Asian Foods. (*Id.*) In response to Question 21 of the SOFA, which applies solely to partnership debtors and requires disclosure of the "name and percentage of partnership interest of each member of the partnership," appellant listed Amstan, Amstan Real Estate, and Asian Foods. (*Id.*) He stated that he had a 100% controlling interest in each business and listed the address and a short description for each entity. (*Id.*)

### 3. Books and Records

The debtors identified Vinod Abraham as their income tax preparer on their joint income tax returns. (*Id.* at 810.) At trial, appellant testified that he was in possession of the debtors' books and records. (*Id.*) However, in response to Questions 19(a) and 19(c) of the SOFA, which ask for a list of bookkeepers and accountants who kept or supervised the books and records during the two years immediately preceding the petition date and for firms or individuals in possession of the books and records, appellant responded, "NONE." (*Id.*) In the debtors' First Amended SOFA, appellant listed Vinod Abraham as the holder of the books and records and as the debtors' accountant. (*Id.*)

### 4. Income

Question 1 of the SOFA requires disclosure of gross income from employment and the operation of a business for the current year up to the bankruptcy filing date and for the two calendar years preceding the bankruptcy. Debtors did not list any income for appellant for the applicable years (2013 year-to-date, 2011, and 2012) and listed income totaling $18,000 from Monarch and $0 from "Wife Business Subway Restaurant" for Amy Abraham for 2013 year-to-date only. (*Id.*) In response to Question 2 of the SOFA, which requires disclosure of "other income," debtors listed only an income of $0.00 from Amstan and "Abraham Imports" for appellant. (*Id.* at 810-11.)[3] In their First Amended SOFA, appellant listed his 2012 "income from Amstan LLC" as $15,129 and Amy Abraham's "income from employment" for "2012-2013" as $86,507.78. (*Id.* at 811.) Debtors did not provide any information about Amy Abraham's 2011 income or appellant's 2011 or 2013 income. (*Id.*) The Second Amended SOFA contained the same answers to Questions 1 and 2. (*Id.*)

The debtors' joint tax returns for 2011 show a combined adjusted gross income of $34,037 ($27,750 from employment income,[4] $20,149 from unemployment insurance, and a $13,863 loss from Amstan). (*Id.*) The debtors' joint tax returns for 2012 show a combined adjusted gross income of negative $99,751 ($81,508 from employment income, $35,262 from other income, $15,139

---

[3] Amy Abraham's paystubs for approximately two months prior to the petition date (in the 2013 calendar year) showed that she had a year-to-date income of $45,000 from Monarch as of July 25, 2013. (*Id.*)

[4] On their 2011 W-2 forms, Amy Abraham reported an income of $3,750 from Convermat and appellant reported an income of $24,000 from Amstan. (*Id.*)

4

from business income, and a loss of $231,683 attributable to Amstan). (*Id.*)

### B. Procedural History

On August 23, 2013, the debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. On October 11, 2013, appellee, acting *pro se*, commenced an adversary proceeding against appellant.[5] On February 21, 2014, appellee, who had obtained counsel, filed a motion for leave to file an amended complaint. The motion was unopposed, leave to file an amended complaint was granted, and on March 27, 2014, appellee filed the Amended Complaint. On April 2, 2014, appellant filed an answer to the Amended Complaint. On March 5, 2015, the parties filed a Joint Pre-Trial Memorandum and a trial was held on March 10, 2015, at which appellee and the debtors testified. Pursuant to the Joint Pre-Trial Memorandum, Joint Exhibits A through Z, and appellant's Exhibits C and D were admitted into evidence without objection. On April 10, 2015, the parties filed a Joint Post-Trial Memorandum. On August 4, 2015, Judge Grossman issued the August 4 Order denying appellant's discharge.

Appellant filed a notice of appeal on August 18, 2015 and filed his brief on October 26, 2015. Appellee filed her opposition on November 25, 2015, and appellant filed a reply on December 9, 2015. The Court has fully considered the parties' submissions.

### II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3).

The parties dispute the standard the Court should apply in reviewing the August 4 Order. Appellant argues that the Court should apply a *de novo* standard because "[a]s the facts considered are undisputed, it is the process and way inferential weightage that is given to them . . . which needs *de novo* [sic] review." (Appellant Br. at 7.) Appellee contends that the Court should review the Bankruptcy Court's findings of fact for clear error and conclusions of law under a *de novo* standard. (Appellee Br. at 19.) It is well established that the Court reviews the Bankruptcy Court's legal conclusions *de novo*, mixed questions of fact and law *de novo*, and factual findings for clear error. *See R2 Invs., LDC v. Charter Commc'ns. Inc. (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 482-83 (2d Cir. 2012); *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).[6]

---

[5] Although Amy Abraham is a co-debtor, she was not named as a defendant in the adversary proceeding and no objection to her discharge has been made by appellee.

[6] The question of a debtor's knowledge and intent to deceive under Section 727(a) are questions of fact to which the clear error standard applies. *See In re Bonnanzio*, 91 F.3d 296, 302 (2d Cir. 1996) (finding that the district court did not accord the bankruptcy

court the appropriate degree of deference when it failed to apply a clearly erroneous standard of review to the bankruptcy court's findings of intent); *Marc A. Pergament v. Nancy DeRise (In re DeRise)*, No. 07-CV-3083 (JFB), 2008 WL 850253, at *5 (E.D.N.Y. Mar. 27, 2008) ("The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact. . . .") (internal quotations omitted); *The Cadle Company v. Hunter W. Smith (In re Smith)*, 321 F. App'x. 32 (2d Cir. 2009) ("The question of whether

5

### III. DISCUSSION

Appellant challenges the Bankruptcy Court's August 4, 2015 Order denying appellant's discharge pursuant to Section 727(a)(4)(A). Appellant argues that (i) the Bankruptcy Court acted without jurisdiction because the appellee lacked standing to bring the underlying Amended Complaint, (ii) the Bankruptcy Court abused its discretion in allowing plaintiff to file the Amended Complaint, and (iii) the Bankruptcy Court erred in denying appellant's discharge under Section 727(a)(4)(A) based on its finding that appellant acted with reckless disregard for the truth when he failed to fully disclose his ownership interests in various entities, failed to identify his accountant and the location of his books and records, and omitted 2011 and 2012 income from his SOFA. For the reasons that follow, the Court affirms the Bankruptcy Court's August 4, 2015 order.

#### A. Standing

Appellant argues that the Bankruptcy Court erred by "extending 'standing' to the appellee to contest the discharge of the debtor." (Appellant Br. at 18.) Appellant essentially contends that appellee lacks standing because she is not a creditor; appellant acted as a "conduit" for, and not a recipient of, appellee's $75,000 loan. (*Id.* at 20.)

Under Section 727(c)(1), appellee must be a creditor in order to have standing to object to the granting of a discharge under Section 727(a). *See* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge . . ."). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 1010(10). A claim is a "right to a payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).

Under a *de novo* standard of review, the Court concludes that the Bankruptcy Court correctly determined that appellee is a "creditor" under Section 727(c)(1) with standing to object to appellant's discharge. Appellant does not dispute, and the evidence demonstrates, that appellant received $75,000 from appellee and did not return it. Appellant argues that he was not the recipient of the loan because it was intended for, and transferred to, John. However, the only evidence appellant offered to support his argument that John was the true recipient of the loan was his wife's self-serving testimony. Moreover, the debtors listed appellee as holding an undisputed, liquidated, non-contingent claim of over $1 million when they filed for bankruptcy. (BR at 813.) The fact that appellant disputes appellee's claim does not deprive her of standing. A "claim" includes any right to payment, even one that is disputed. *See* 11 U.S.C. § 101(5); *McGrath v. Moreau (In re Moreau)*, 161 B.R. 742, 744-745 (Bankr. D. Conn. 1993) (finding a creditor has standing even if the claim is disputed and subject to litigation in state court); *Johnson v. Home State Bank*, 501 U.S. 78 (1991) ("Congress intended . . . to adopt the broadest available definition of 'claim.'").

#### B. Appellee's Amended Complaint

Appellant argues that the Court abused its discretion in allowing appellee's objection under Section 727(a)(4)(A) through the

---

Debtor acted with intent to hinder or defraud his creditors is a question of fact."). In any event, as discussed *infra*, even under a *de novo* standard of review, the Court would reach the same conclusion.

Amended Complaint. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, which applies to bankruptcy proceedings through Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading. . . ." Appellee argues that appellant waived any objection to the relation back of the Amended Complaint by raising it here for the first time. (Appellee Br. at 18-19.) Appellee filed a motion to amend her complaint on February 21, 2014, appellant did not object, and the motion was granted by the Bankruptcy Court on March 27, 2014. (BR at 66.) Appellant admitted that the Amended Complaint related back to the original complaint in an Answer filed on April 2, 2014 (*id.* at 68, 81) and did not appeal the March 27, 2014 order within the required fourteen-day period. *See* Fed. R. Bankr. P. 8002(a). Even if appellant could now bring an appeal, the Court concludes that appellee's Amended Complaint asserted a claim arising out of the conduct, transaction, or occurrence attempted to be set out in the original complaint, which was filed when the appellee was acting *pro se*. The relevant inquiry under Rule 15 of the Federal Rules of Civil Procedure "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quoting *Stevelman v. Alias Res. Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)). Appellee's initial complaint put the appellant on notice that appellee was seeking relief for the false statements appellant allegedly made in his petitions and schedules.

The Amended Complaint, filed after appellee retained counsel, provided more detail about the initial allegations of false statements regarding assets and liabilities made in the appellant's schedules. (*See* BR at 5-6, 70-74.) In short, under a *de novo* standard of review, the Court agrees with the Bankruptcy Court's analysis on this issue.

C. Denial of a Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)

Appellant argues that the Bankruptcy Court erred in denying appellant's discharge after concluding that the totality of the omissions and inaccuracies in the debtors' Schedule B and SOFA demonstrate a reckless disregard for the truth and accuracy of the documents sufficient to satisfy the "knowing and fraudulent" element of Section 727(a)(4)(A). For the reasons set forth below, the Court disagrees and affirms the Bankruptcy Court's denial of appellant's discharge under Section 727(a)(4)(A).[7]

1. Legal Standard

Section 727(a)(4)(A) of Title 11 of the United States Code provides:

(a) The court shall grant a debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). Because Section 727 "impos[es] an extreme penalty for wrongdoing, [it] must be construed strictly against those who object to the debtor's discharge and liberally in favor of the

---

[7] Neither party appeals and this Court does not disturb the Bankruptcy Court's finding that appellee did not meet her burden of proving the elements of a non-dischargeability claim under Section 523(a)(2)(A).

bankrupt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quotations and citation omitted); *see also Berger & Assocs. Attorneys, P.C. v. Kran (In re Kran)*, 493 B.R. 398, 403 (S.D.N.Y. 2013) (accord). "The objecting creditor bears the burden to establish the requirements of § 727 by a preponderance of the evidence." *Virovlyankaya v. Virovlyanskiy (In re Virovlyanskiy)*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013); *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010); *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000).

To prove an objection to discharge under Section 727(a)(4)(A), the party objecting to discharge must establish by a preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Moreo*, 437 B.R. at 59 (quotations and citation omitted); *see also Republic Credit Corp. v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009).

The materially false statements or omissions may have been made as part of or omitted from the bankruptcy petition, schedules, statement of affairs, or the bankruptcy proceeding itself. *See Gobindram v. Bank of India*, 538 B.R. 629, 637 (E.D.N.Y. 2015); *see also New World Rest. Grp., Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (E.D.N.Y. 2005); *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008).

A false oath is material if it "is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" *St. Clair v. Cadles of Grassy Meadows II, L.L.C. (In re St. Clair)*, 550 B.R. 655, 674 (E.D.N.Y. 2016) (citing *In re Moreo*, 437 B.R. at 65) (quotations omitted). The non-disclosure of any assets that are potentially part of a bankruptcy estate can be material even if they are worthless or possibly exempt from distribution to creditors. *See In re Murray*, 248 B.R. at 230 (finding debtors' failure to disclose information about a 401K plan and a $8,000 check to be material even though the assets were arguably exempt assets under the bankruptcy code); *see also In re Moreo*, 437 B.R. at 65 (finding debtors' failure to disclose three personal injury lawsuits to be material even though they were potentially worthless).

A debtor's intent to defraud or deceive can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) the debtor's reckless disregard for the truth. *Adler v. Lisa Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y. 2008); *see also Dranichak v. Rosetti,* 493 B.R. 370, 379 (N.D.N.Y. 2013); *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (citations omitted). Intent to defraud, however, "will not be found in cases of ignorance or carelessness." *In re Gardner*, 384 B.R. at 667.

Because "[f]raudulent intent is rarely susceptible to direct proof[,] . . . courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983) (internal citation omitted) (quoting *In re Freudmann*, 362 F. Supp. 429, 433 (S.D.N.Y. 1973), *aff'd*, 495 F.2d 816 (2d Cir. 1974) (per curiam)). "Badges of fraud" include secreting proceedings of a transfer, transferring property to family members, the lack or inadequacy of consideration, the general chronology of the events or transactions in question, and the concealment

of relevant facts. *See id.* at 1582-83 (quoting and citing cases). Further, "[w]here there has been a 'pattern' of falsity, or a 'cumulative effect' of falsehoods, a court may find that [fraudulent] intent has been established." *Monety Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (citation omitted). With respect to reckless indifference to the truth, courts in the Second Circuit have recognized that fraudulent intent may be inferred from a series of incorrect statements and decisions contained in the schedules. *See Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 571-72 (E.D.N.Y. 2000) ("[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." (citations omitted)); *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (citing, *inter alia*, *Diorio v. Kreister-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969); *In re Kaiser*, 722 F.2d at 1583 n.4)); *see also In re Smorto*, 2008 WL 699502, at *6 (citing cases). In examining whether debtors exhibited a reckless disregard or indifference to the truth, courts consider "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014) (internal quotation marks and citations omitted).

Once the moving party meets its initial burden to produce evidence of a false statement, "the burden of production then shifts to the debtor[] to produce a 'credible explanation' for making the 'false and fraudulent representations,'" *Cadles of Grassy Meadows II, L.L.C. v . St. Clair (In re St. Clair)*, No. 13-MC-1057 (SJF), 2014 WL 279850, at *7 (E.D.N.Y. Jan. 21, 2014) (quoting *In re Moreo*, 437 B.R. at 59), or to "prove that it was not an intentional misrepresentation." *In re Gardner*, 384 B.R. at 668 (citations omitted). "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *In re Maletta*, 159 B.R. at 112 (quoting *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). Furthermore, purported reliance on the advice of counsel cannot excuse a false representation in a petition when the error should be plainly obvious to the debtor. *In re Dubrowsky*, 244 B.R. at 573 ("An explanation by the debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. However, even the advice of counsel is not a defense to a charge of making a false oath or account when it is transparently plain that the property should be scheduled." (citing *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974)); *In re Kelly*, 135 B.R. at 462 ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper.")).

2. Application

Appellant appeals the Bankruptcy Court's denial of discharge on several grounds. First, appellant argues that the Bankruptcy Court erred in concluding appellant made a false statement under oath. Second, appellant argues that his misstatements and omissions were not material. Third, appellant argues that he lacked fraudulent intent, because, among other things, he relied on his attorney and that reliance negates any inference of fraud due to reckless indifference. The Court addresses

each argument in turn, and, for the reasons discussed below, affirms the Bankruptcy Court's denial of appellant's discharge pursuant to Section 727(a)(4)(A).[8]

### a. False Oath

Appellant argues that the Bankruptcy Court erred in concluding that he made a statement under oath and that statement was false. Appellant contends that "[o]mission at one place mentioning it another place in the petition is not false oath, but only a lack of perfection." (Appellant Br. at 14.) Appellant signed the petition and its accompanying declarations under a penalty of perjury and he admits, and the documentary evidence shows, that his schedules and statements contain false information, omissions, and incomplete or inaccurate information.[9] The Bankruptcy Court did not err in concluding that these inaccurate representations constitute false statements and that a debtor is not absolved of the duty to provide full and complete disclosure simply because certain interests may have been indicated elsewhere in his petition. "A debtor has a paramount duty to carefully consider the questions posed on the petition, schedules, and statements and to verify that all information is correct." *Ross v. Wolpe (In re Wolpe)*, No. 09-CV-13469, 2013 WL 1700930, at *10 (Bankr. N.D.N.Y. Apr. 18, 2013) (citations omitted).

### b. Materiality

Appellant next argues that "[t]he bankruptcy judge . . . takes a very wide or a very liberal interpretation to materiality. For him, everything is 'material' to and by the debtor. . . . The bankruptcy judge feels that the debtor was supposed to 'disclose worthless assets and unprofitable business transactions in the petition.'" (Appellant Br. at 14.) The Court rejects this argument and agrees with the Bankruptcy Court that appellant's misstatements and omissions were materially false under Section 727(a)(4)(A). Appellant's business interests, income, the location of appellant's books and records, and the identity of his accountant bear directly on appellant's financial condition, his business dealings, and the potential discovery of estate assets in the years leading up to the petition date, and are clearly material to his bankruptcy case. "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable. This is because the Bankruptcy Court, not the debtor, decides what property is exempt from the bankruptcy estate." *In re*

---

[8] Even under *de novo* review, which appellant argues is the appropriate standard of review, the Court would reach the same conclusion.

[9] The Bankruptcy Court found appellant made the following four false statements: (i) appellant failed to disclose his 100% interest in Amstan, Amstan Real Estate, and Asian Foods on Line 13 of Schedule B as originally filed with his bankruptcy petition, and when he amended his Schedule B one month later, he added Amstan to Line 13, but did not include Amstan Real Estate or Asian Foods; (ii) appellant did not disclose his ownership of Abramen in response to Question 18 of the SOFA. Although Abramen was dissolved in 2010, Question 18 of the SOFA requests the debtor list all businesses which a debtor holds any positition as officer or director within the six years preceding bankruptcy; (iii) appellant did not disclose the name of his accountant, Vinod Abraham, in reponse to Question 19 of the SOFA. Vinod Abraham was listed as the debtors' tax preparer on their joint 2011 and 2012 tax returns; and (iv) appellant omitted his gross income for 2011, 2012, and year-to-date gross income for 2013 on the SOFA. The debtors' joint tax returns and appellant's W-2s show an employment income of $24,000 from Amstan in 2011 and $15,129 in profits from the operation of Amstan in 2012. In addition, appellant did not disclose unemployment insurance of $20,149 in 2011 and $20,000 in employment income from 2012, which the debtors' joint tax returns also show. The debtors' 2012 joint tax returns reflect gross employment income of $81,508 and Amy Abraham's W-2s show gross income of $68,507.78.

*Moreo*, 437 B.R. at 65; *see also In re Abramov,* 329 B.R. at 134 (E.D.N.Y. 2005) (finding debtors' concealment of property, even though it had little or no value, to be a sufficient basis for denying discharge); *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994) (finding debtor's concealment of $30,000 of income in the two-and-a-half years before his bankruptcy to have been a material false statement); *In re Murray*, 248 B.R. at 230 (finding debtors' failure to disclose information about a 401K plan and a $8,000 check to be material even though the assets were arguably exempt assets under the bankruptcy code).

### c. Fraudulent Intent

Appellant also argues that the Bankruptcy Court erred in finding that the totality of omissions and inaccuracies in the appellant's Schedule B and SOFA exhibit a reckless disregard for the truth, thus satisfying the "knowing and fraudulent" element of Section 727(a)(4)(A). Appellant asserts that he has been forthright and that "carelessness or ignorance do not bar a debtor's discharge." (Appellant Br. at 16.) This argument seeks to minimize appellant's repeated and unexcused false statements. Based on the record developed before and during the trial, the Bankruptcy Court correctly determined that appellant exhibited a reckless disregard for the truth, such that the fraudulent intent requirement of Section 727(a)(4)(A) is satisfied. Appellant failed to disclose his business interests, to properly identify his accountant, and stated that he made $0.00 in gross income for 2011, 2012, and 2013 when his tax returns for 2011 and 2012 stated otherwise. The Bankruptcy Court also concluded that appellant offered no credible explanation for these false statements. Appellant has a degree in finance and has owned several businesses, so his omissions cannot be attributed to a lack of sophistication. His argument that he corrected any false statements in his amendments is also unavailing. Appellant did not make any corrections until at least seven months after filing his petition, and his amended petitions still contain omissions related to appellant's business interests and his wife's income. The totality of appellant's conduct clearly demonstrates a "reckless disregard for the truth and intent . . . [to] conceal[] information from the Court and [apppellant's] creditors." *In re Moreo*, 437 B.R. at 64; *see also In re Kaiser*, 722 F.2d 1574, 1584 n. 4 (2d Cir. 1983) (noting that a pattern of falsehoods evidencing a "reckless and cavalier disregard for the truth" is sufficient to establish fraudulent intent); *Micro Connections, Inc. v. Shah (In re Shah)*, 388 B.R. 23, 39 (Bankr. E.D.N.Y. 2008) ("Each of these facts taken individually may not rise to the level of materiality, but cumulatively, they show a pattern of deceit."); *In re Virovlyanskiy*, 485 B.R. 268 at 272 ("If the debtor fails to provide evidence that the false statement was unintentional, or to provide a credible explanation, a court may infer fraudulent intent."); *Rockstone Capital, LLC v. Bub (In re Bub)*, 502 B.R. 345, 356 (Bankr. E.D.N.Y. 2013) ("[N]o carelessness could excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so.") (internal quotations omitted)).

### d. Reliance on Counsel

Appellant argues that he has been "very honest and forthright in testimony and has not uttered a single false statement" and that any omissions or misstatements were the fault of incompetent counsel. (Appellant Br. at 16-17.) It is well-established that a debtor's purported reliance on the advice of counsel is unreasonable when the erroneous advice should be "transparently plain" to the debtor. *In re Dubrowsky*, 244 B.R. at 573; *In re Mascolo*, 505 F.2d at 277 n.4; *see also In re*

*St. Clair*, 533 B.R. at 42 (finding that "the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Indeed advice of counsel is not an impenetrable shield behind which [a debtor] may continually hide." (internal quotation marks and citations omitted)); *In re Kelly*, 135 B.R. at 462 ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper."); *In re Tully*, 818 F.2d at 111 ("[A]n attorney's willingness to bear the burden of reproach [cannot] provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules."). This defense, therefore, does not apply in situations where a debtor fails to review the petition and supporting schedules prepared by his attorney.[10] It is the debtor's duty to read the entire petition (no matter who prepared it) before signing and swearing to its accuracy. For example, in *Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 137 (Bankr. D. Minn. 2009), the court found that, even assuming the omissions in the petition were caused by debtors' counsel, the debtors subsequently had ample opportunity to read and review the petition for accuracy but apparently failed to do so, undermining any claim of reliance on advice of counsel. It is well-established that questions requiring basic factual responses are "transparently plain." *See, e.g.*, *In re Wolpe*, 2013 WL 1700930, at *11 ("[T]he information sought from the Debtors was straightforward and required no legal interpretation for an individual to comprehend. It is 'transparently plain' that correct income, expenses, and transactional information should have been provided regardless of the advice of counsel."

(citations omitted)). It is the independent duty of all debtors—whether they are advised by counsel or not—to ensure that the information in their petition is accurate. Failing to do so before signing the petition under most circumstances constitutes reckless indifference. The chapter 7 petition itself plainly warns immediately above the line on which appellant signed the SOFA: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." This warning could not be clearer, and no supplemental admonition from an attorney is required under the law to adequately apprise a debtor of his duty to read his petition fully for its truth and accuracy.

Taken together, the Court finds that the Bankruptcy Court did not err in concluding that the totality of the appellant's omissions and inaccuracies exhibited a reckless disregard for the truth and accuracy of the documents submitted and that the "knowing and fraudulent" element of Section 727(a)(4)(A) is, therefore, satisfied.

---

[10] The Court does not evaluate the quality of appellant's legal counsel in preparation of the petition, and finds only that the law is clear that any alleged errors by appellant's counsel do not, in this particular case, negate appellant's reckless indifference in submitting obvious inaccuracies in his petition.

III. CONCLUSION

For the foregoing reasons, having conducted a *de novo* review of all of the issues raised in the appeal, appellant's appeal of the Bankruptcy Court's denial of appellant's discharge pursuant to Section 727(a)(4)(A) is denied. The Court affirms the rulings of the Bankruptcy Court in all respects. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 28, 2016
      Central Islip, New York

\* \* \*

Appellant is represented by Karamvir Dahiya, Dahiya Law Offices LLC, 75 Maiden Lane, Suite 506, New York, New York 10028. Appellee is represented by Gregory Messer and Joel Alan Gaffney, Law Offices of Gregory Messer, 26 Court St., Suite 2400, Brooklyn, New York 11242.